## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Kelly Renee Bower,

          Plaintiff

    v.

Nancy A. Berryhill,
Acting Commissioner of
Social Security

          Defendant

No.3:17-CV-01197

(Judge Richard P. Conaboy)

FILED
SCRANTON

MAY 0 9 2018

Per_____ CTC
DEPUTY CLERK

### Memorandum

## I. Procedural Background.

We consider here the appeal of Plaintiff Kelly Bower from
an adverse decision of the Social Security Administration ("SSA"
or "Agency")on her application for Disability Insurance Benefits
("DIB") and Supplemental Security Income ("SSI"). Plaintiff's
application was initially denied at the administrative level
whereupon she requested a hearing before an Administrative Law
Judge ("ALJ"). She did receive that hearing on March 23, 2015.
The ALJ denied Plaintiff's application by written decision dated
July 29, 2015. The ALJ's decision was affirmed by the Appeals
Council by letter dated May 8, 2017. The action by the Appeals
Council constitutes a final decision by the Agency which vests
this Court with jurisdiction pursuant to 42 U.S.C. § 405g.
Plaintiff appealed to this Court by Complaint (Doc. 1) filed
July 7, 2017.

## II. **Testimony before the ALJ.**

### A. **Plaintiff's testimony on questioning by the ALJ.**

A hearing was conducted before ALJ Michele Stolls in Wilkes-Barre, Pennsylvania on March 31, 2015. Testimony was heard from Plaintiff, Ruth Price (Plaintiff's "aunt" who raised her), and Carmen Abraham, a vocational expert ("VE"). Also present was Plaintiff's attorney, Barbara Feudale. The testimony may be summarized as follows.

Plaintiff lives in Shamokin, Pennsylvania. She resides with Ruth Price along with her brother. Her brother is epileptic and has an anxiety disorder. She helps care for her brother by monitoring his medications and preparing meals for him in a microwave oven. She also is the representative payee for her brother's welfare check and handles his financial affairs. Her activity at home is confined to light sweeping and dusting, the care of two parakeets, reading, watching television, and doing handicrafts with yarn. (R. 81-83).

Plaintiff has a driver's license but had a friend drive her to the hearing. She can no longer drive long distances. She does help with grocery shopping once a month. She carries light bags but her aunt, who is eighty-one years of age, carries the heavier items. She attends church regularly and occasionally reads the bible aloud and leads the congregation in song. In

-2-

recent years, however, she has not been singing because the choir has been disbanded. (R. 84-87).

She can walk less than one mile and can comfortably lift no more than ten pounds. She is having trouble managing her diabetes and her sugar level has been fluctuating widely. She does watch her carbohydrate intake and measures her food in portions. She goes through mood swings and sometimes yells at her aunt. She attributes these mood swings to menopause. She also suffers from sleep apnea and uses a CPAP machine regularly. Her aunt has to help her shower and dress because doing so without assistance causes her to lose her breath. She does have an inhaler to help her breathing but does not use it regularly because using it makes her cough. (R. 91-99).

### B. Testimony of Ruth Price.

Ms. Price testified that she is not Plaintiff's aunt by a blood relationship but that she did raise her from infancy. Plaintiff was abandoned as an infant. Ms. Price stated that Plaintiff is a very nervous person and that she must be told several times how to do something before she can master a task. She described Plaintiff as "very faithful at work". Plaintiff does not drink or smoke. She has crying spells every day and tends to sleep only three to four hours at night. She usually naps during the day. Plaintiff has friends who visit her at home

and she sometimes goes out with them. Plaintiff drives when she wants to. (R. 102-106).

Ms. Price relates that Plaintiff worked fifteen years at Paper Magic but lost her job when the company moved out of Shamokin. Since then her health has declined. She has been diagnosed with cirrhosis of the liver and her anxiety problems have gotten worse. Ms. Price lives next door to the Plaintiff and spends five to six hours each day with her. Plaintiff has never seen a psychologist. Upon hearing the Plaintiff has not seen a psychologist, the ALJ stated that she should schedule a consultative examination. Plaintiff's council agreed to the examination and Ms. Price advised that she would see to it that Plaintiff would attend the examination. (106-110).

**C. Plaintiff's testimony upon questioning by her attorney.**

Upon questioning by her attorney, Plaintiff stated that she has been having a problem with numbness in her legs. This has happened three or four times. She attributes the numbness in her legs to her diabetes. The biggest change in her health since she last worked is the deterioration in her breathing. She talks to her birth mother on the telephone and she has informed Plaintiff that she was drinking and doing drugs during her pregnancy with Plaintiff. Plaintiff advised that the doctors believe her mother's substance abuse caused some of her medical problems. (R. 110-112).

-4-

## D. **Testimony of the vocational expert.**

Mr. Abraham testified that he had reviewed the file on Plaintiff's work history and that his opinion would be consistent with the Dictionary of Occupational Titles unless he stated otherwise. He stated that, at forty-one years of age, Plaintiff was a "younger individual" under the Agency's regulations. She is a high school graduate and her past relevant work was as a packer and assembler. The Dictionary of Occupational Titles describes such work as "medium, unskilled". Mr. Abraham was asked by the ALJ (R. at 113) to respond to a hypothetical question in which he was to assume:

> … we're dealing with the hypothetical claimant
> who has the same age, education, and work
> experience as this claimant. Assume further that
> the hypothetical claimant has the residual
> functional capacity to perform work at no more
> that the exertional level. However, her ability
> to work at that level is reduced in that she
> would be limited to occupations that require no
> more that occasional postural maneuvers such as
> balancing, stooping and climbing on ramps and
> stairs, but must avoid occupations that require
> climbing on ladders, ropes and scaffolds, or
> kneeling, crouching or crawling.

She must avoid occupations that require
pushing or pulling with the lower extremities to
include the operation of pedals. She would be
limited to occupations that require no more than
occasional overhead reaching, pushing and
pulling with the upper left extremity to include
the operation of hand leavers and overhead work.
She must avoid concentrated, prolonged exposure
to fumes, odors, dusts, gases, chemical
irritants, environments with poor ventilation,
temperature extremes, vibrations, extreme
dampness and humidity.

She would be limited to occupations which
do not require exposure to hazards such as
dangerous machinery and unprotected heights. She
would be limited to occupations requiring no
more than simple, routine tasks not performed in
a fast paced production environment involving
only simple work-related decisions and, in
general, relatively few workplace changes. She
would be limited to occupations which require no
more that occasional interaction with
supervisors, coworkers and members of the
general public. And, she would be limited to

occupations requiring low stress defined as

occasional decision-making required. Could such

a hypothetical claimant perform her past

relevant work?

In response to the hypothetical question, Mr. Abraham stated that a person with the limitations expressed in that hypothetical question would be unable to perform Plaintiff's past relevant work. However, Mr. Abraham opined that the hypothetical individual and, hence, the Plaintiff could perform sedentary, unskilled jobs that exist in significant numbers in the national economy including: bench assembler; inspector; and finisher. When the ALJ added an additional limitation to the hypothetical question such that Plaintiff would also be off task up to 30% of the working day due to chronic depression and chronic fatigue status post hysterectomy, Mr. Abraham stated that such a person would not be able to maintain any employment whatsoever. (R. 113-118).

**III. Medical Evidence.**

There is a great deal of medical evidence in the record indicating that Plaintiff treats, or has treated, for numerous maladies including: morbid obesity, diabetes mellitus, adrenal insufficiencies, bursitis of the right hip, obstructive sleep apathy, depressive disorder, unspecified anxiety disorder, and unspecified personality disorder. Each of these conditions were classified as "severe impairments" by the ALJ. (R. at 25). There

is also record evidence of treatment for a variety of ailments that the ALJ noted but found to be non-severe. These include: allergic rhinitis, premature menopause, gastric reflex, mild degenerative disc disease of the lumbar spine, transient vision loss in the left eye consistent with migraine headaches, and cirrhosis.[1] The ALJ stated, however, that she had "considered all of the Plaintiff's severe and non-severe impairments in determining the claimants residual functional capacity, and appropriate exertional, postural, reach, environmental, and mental limitations have been included to address the claimant's severe and non-severe impairments." (R. at 26).

Significantly, while Plaintiff has treated extensively with numerous physicians, none of them has produced a functional capacities report or any type of communication that expresses a medical opinion that Plaintiff is under a disability. To the contrary, one of Plaintiff's treating physicians, Dr. Jill E. Nye, specifically indicated in a progress note dated April 22, 2013: "She is not disabled. She is eligible for employment." (R. at 688-689).

The only medical professionals who have executed comprehensive assessments of Plaintiff's physical and mental

---

[1] Plaintiff's diagnosis of cirrhosis was not rendered until January 15, 2015, almost three and one half years after her alleged onset of disability. (R. at 1489).

capacities did so on the initiative of the ALJ. These evaluators were: Dr. John Menio, a medical doctor, and Kirsten McNelis PH.D., a psychologist. The former reviewed all of Plaintiff's medical records preparatory to completing a Medical Source Statement regarding Plaintiff's physical capacity for work. (R. 2298-2308). The latter performed a consultative psychiatric examination and then assessed Plaintiff's mental state in a report produced May 21, 2015. (R. 2312-2320). Dr. Menio opined that, physically speaking, Plaintiff was limited to sedentary work. Dr. McNelis found that Plaintiff had only mild to moderate impairment in carrying out instructions, making judgments, and relating to the general public, coworkers, and supervisors. The ALJ relied upon the assessments of Drs. Menio and McNelis to craft a residual functional capacity for claimant that was consistent with an ability to perform sedentary work with additional modifications.

**IV. ALJ Decision.**

The ALJ's decision (Doc. 10-2 at 22-46) was unfavorable to the Plaintiff. It includes the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date.

3. The claimant has the following severe combination of impairments: morbid obesity; diabetes mellitus (DM); adrenal insufficiency; bursitis of the right hip; obstructive sleep apathy (OSA); depressive disorder not elsewhere classified; anxiety state unspecified/anxiety disorder with rule out anxiety disorder due to general medical condition; and unspecified personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) however, her ability to work at

that level is reduced in that she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, and climbing on ramps and stairs; must avoid occupations that require climbing on ladders, ropes, and scaffolds or kneeling, crouching, and crawling; must avoid occupations that require pushing or pulling with the lower extremities to include the operation of pedals; is limited to occupations that require no more than occasional overhead reaching, pushing and pulling with the upper left extremity to include the operation of hand levers or overhead work; must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, and extreme dampness and humidity; is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights; is limited to occupations requiring no more that simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general,

relatively few work place changes; is limited to occupations which require no more than occasional interaction with supervisors, coworkers and members of the general public; and is limited to occupations requiring low stress, defined as occasional decision making required.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 27, 1973 and was 37 years old which is defined as a younger individual aged 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability

as defined in the Social Security Act, from

October 1, 2011 thru the date of this decision.

## V.  Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together

---

[2]   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R. at 40).

## VI. Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla". It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's

-15-

duty to scrutinize the record as a whole to determine whether
the conclusions reached are rational." *Dobrowolsky v. Califano*,
606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court
clarified that the ALJ must not only state the evidence
considered which supports the result but also indicate what
evidence was rejected: "Since it is apparent that the ALJ cannot
reject evidence for no reason or the wrong reason, an
explanation from the ALJ of the reason why probative evidence
has been rejected is required so that a reviewing court can
determine whether the reasons for rejection were improper."
*Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake
an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp
v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no
requirement that the ALJ discuss in her opinion every tidbit of
evidence included in the record." *Hur v. Barnhart*, 94 F. App'x
130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can
determine that there is substantial evidence supporting the
Commissioner's decision, . . . the *Cotter* doctrine is not
implicated." *Hernandez v. Commissioner of Social Security*, 89
Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final
decision if it is supported by substantial evidence, even if the
court would have reached different factual conclusions.
*Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v.*

- 16 -

*Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. §
405(g) ("[t]he findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be
conclusive . . ."). "However, even if the Secretary's factual
findings are supported by substantial evidence, [a court] may
review whether the Secretary, in making his findings, applied
the correct legal standards to the facts presented." *Friedberg
v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal
quotation omitted). Where the ALJ's decision is explained in
sufficient detail to allow meaningful judicial review and the
decision is supported by substantial evidence, a claimed error
may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of
Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not
precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d
Cir. 2000) ("[O]ur primary concern has always been the ability to
conduct meaningful judicial review."). Finally, an ALJ's decision
can only be reviewed by a court based on the evidence that was
before the ALJ at the time he or she made his or her decision.
*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VII. Discussion**

    **A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff raises two issues which she alleges require a remand of this case. The Court will consider these arguments, both of which involve a question whether she met an Agency "Listing", in turn. It is an ALJ's obligation to determine whether a claimant's

impairment or combination of impairments is sufficiently severe to meet or medically equal the criteria of a Listing. If all such criteria are established of record no further inquiry is necessary and the claimant has established disability. However, to be found disabled a claimant must show that all the criteria of a Listing have been met. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); see also 20 C.F.R. §§ 404.1525(c)(3) and 4.16.925(c)(3).

**1.   Whether Plaintiff met the criteria of Listing 12.04(C) concerning "Affective Disorders"?**

To establish disability under Listing 12.04(C), a claimant must establish:

> Medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the

environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(c).

While Plaintiff does have a medically documented history of a chronic affective disorder (depression) of at least two years' duration, her treatment history does not establish: (1) that she experienced any episode of decompensation; [3] (2) that any increase on her mental demands or change in her environment would likely cause her to decompensate; and (3) that she currently has a history of one or more years' inability to function outside of a highly supportive living arrangement. Plaintiff's argument on this point simply reiterates a diagnosis of depression and mood disorder without pointing to anything in the record that would specifically establish any of the three criteria referenced above. Plaintiff has had no hospitalizations for any affective disorders nor has she been

---

[3] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. Social Security Listing 12.00 Mental Disorders at (C)(4).

under the treatment of a psychologist or a psychiatrist during the relevant time period. Plaintiff was evaluated (on the initiative of the ALJ) by Dr. McNelis who concluded: "The results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significantly enough to interfere with the claimant's ability to function on a daily basis." (R. 2316). Dr. McNelis also indicated: (1) that Plaintiff had only mild impairment in her ability to understand and remember simple instructions, to carry out simple instructions, and to make judgments on simple work-related decisions: and (2) that Plaintiff had moderate impairment in her abilities to carry out complex instructions, to make judgments on complex work-related decisions, to relate to co-workers, supervisors, and the general public, and to respond to changes in a routine work setting. (R. 2318-19).

Because Plaintiff's argument regarding Listing 12.04(C) is confined to establishing diagnoses of affective disorders, it is insufficient to establish that these disorders are sufficiently severe to meet the aforementioned criteria of that Listing. Moreover, the only opinion evidence in the record from a mental health professional is that of Dr. McNelis. Given Dr. McNelis' relatively benign assessment of Plaintiff's psychiatric and cognitive state, the ALJ's decision that Plaintiff did not meet the criteria of Listing 12.04 (C) is certainly supported by the requisite "substantial evidence".

Accordingly, Plaintiff's assertion of error on this point must be rejected.

2. **Whether Plaintiff met the criteria of Listing 9.00 Endocrine Disorders?**

Plaintiff has documented problems with two of her endocrine glands, the pancreas and the adrenal gland. Her pancreatic disorder has resulted in diabetes mellitus ("DM") and she is also afflicted by adrenal insufficiency. The Agency evaluates impairments resulting from endocrine disorders under the listings for other body systems. See Listing 9.00 Endocrine Disorders-Adult at Subsection B. DM, when uncontrolled, may meet the criteria of the listing. Indicia of uncontrolled DM include hyperglycemia producing acute and long term complications such as diabetic ketoacidosis or chronic hyperglycemia that produces peripheral neurovascular disease, diabetic retinopathy, coronary artery disease, diabetic nephropathy, poorly healing or fungal skin infections, sensory neuropathies, and cognitive impairments or depression. See § 9.00 Endocrine Disorders, Subsections (B)(4) and (B)(5). Plaintiff does not direct the Court to any specific portion of the record that demonstrates any of the listed complications except for mood disorders under listing 12.04 (C). Since the Court has already concluded that Plaintiff's cognitive/emotional impairments are not sufficiently severe to meet the requirements of Listing 12.04 (C), we see no basis to conclude

that Plaintiff meets the criteria for Listing 9.00 Endocrine Disorders based upon any of the other complications of her DM.[4]

With respect to Plaintiff's argument that she meets Listing 9.00 as a result of her adrenal insufficiency, these disorders are disabling when they produce osteoporosis with fractures that compromise the ability to walk or use the upper extremities, hypertension that causes heart failure or recurrent arrhythmias, adrenal-related weight loss, or disabling mood disorders as described in Listing 12.04 (again, a proposition already rejected by the Court). Plaintiff does not direct the Court to any specific portion of the record which would establish any of the criteria for disability due to adrenal insufficiency. As stated earlier, a mere diagnosis of a condition does not suffice to establish that it is disabling. 20 C.F.R. §§ 404.1525(d), 4.16.925 (d).

The only medical doctor who produced a Medical Source Statement, Dr. John Menio, reviewed Plaintiff's medical records and concluded that she retained the physical ability to perform sedentary work. While the ALJ assigned only partial weight to Dr. Menio's assessment, she went further and ascribed additional limitations to Plaintiff that, nonetheless, did not preclude Plaintiff from gainful employment as per the testimony of the

---

[4] We note also that numerous excerpts from the record that are identified in defendant's brief (Doc. 12 at 17-18), afforded the ALJ an additional basis to reject the argument that Plaintiff is disabled under Listing 9.00 due to her DM.

vocational expert. This, in combination with the fact that Plaintiff provided no specific citation to the record that would support her claim that she meets the criteria for disabling adrenal insufficiency, provides the requisite degree of "substantial evidence" to support the ALJ's conclusion. Thus, we must also reject Plaintiff's assignment of error regarding Listing 9.00 Endocrine Disorders.

**VIII. Conclusion.**

For the reasons expressed above, Plaintiff's appeal from the Agency's decision denying benefits will be denied. An Order consistent with this determination will be filed contemporaneously.

**BY THE COURT,**

5-9-18

**Richard P. Conaboy**
**United States District Judge**